## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                                CRIMINAL ACTION NO.  3:88-00272-01

JOHN P. MCCOY

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant John P. McCoy's "Motion for Compassionate Relief." ECF No. 118; ECF No. 129 (amended version). The Government opposes the motion. For the following reasons, the Court **GRANTS** the motion in part and **DENIES** in part.

### I.        BACKGROUND

On March 17, 1989, a grand jury in the Southern District of West Virginia returned a Thirteen-Count superseding indictment against Mr. McCoy and four co-defendants. Presentence Report, *Gov't. Ex. A*, at 1, ECF No. 133-1, at 2. On May 23, 1989, a grand jury in the Southern District of West Virginia returned a Nine-Count indictment against Mr. McCoy and four co-defendants. *Id.* at 5, ECF No. 133-1, at 6. The underlying conduct involved a bank robbery of almost $300,000, intimidation of multiple federal witnesses, the murder of a federal witness, counterfeiting and distributing U.S. currency, conspiring to escape custody, and conspiring to kill additional federal witnesses. *Id.* at 7–16, ECF No. 133-1, at 8–17; Judgment Order, *Gov't. Ex. B*, ECF No. 133-2, at 1. The charges were separated into multiple proceedings. Mr. McCoy's offenses that occurred after November 1, 1987, are most relevant to the motion before the Court and include:

Docket No. 3:88-00272-01:

> Count Seven, Count Eight, Count Ten, and Count Eleven: "18 USC
> 1512(b)(3), Intimidation and Threats to Prevent Others from

Communicating Information to Law Enforcement Officers . . . [on four different occasions in 1988]."

Presentence Report, *Gov't. Ex. A*, at 2–3, ECF No. 133-1, at 3–4.[1]

Docket No. 3:89-00101-01:

> Count One: "18 USC 371, Conspiracy to Violation Title 18, USC 1512(a)(1)(A) and 2, Attempt to Kill other Persons to Prevent Attendance and Testimony at Trial, and Aiding and Abetting . . . from approximately March 20, 1989 until May 2, 1989 . . .."
> Count Two, Three, Four, and Five: "18 USC 1512(a)(1)(A) and 2, Attempt to Kill other Persons to Prevent Attendance and Testimony at a Trial, and Aiding and Abetting . . . from on or about April 25, 1989 and continuing thereafter until on or about May 2, 1989 . . .."
> Count Six: "18 USC 1958(a) and 2, Causing Another to Travel in Interstate Commerce with Intent to Commit Murder, and Aiding and Abetting . . . from on or about April 25, 1989 . . .."
> Count Seven: "18 USC 1958(a) and 2, Use of a Telephone in Interstate Commerce with Intent that Murders be Committed, and Aiding and Abetting . . . on or about April 25, 1989 and continuing thereafter until on or about May 2, 1989. . .."
> Count Eight: "18 USC 924(c) and 2, the Use of a Firearm in an Attempt to Murder another to Prevent Attendance and Testimony at a Trial, and Aiding and Abetting . . . on or about April 26, 1989 . . .."
> Count Nine: "18 USC 371, Conspiracy to Violate 18 USC 751 and 752, Attempted Escape and Instigating or Assisting Escape . . . from on about April 5, 1989 until May 2, 1989 . . .."

*Id.* at 5–7, ECF No. 133-1, at 6–8.

While some co-defendants pleaded guilty and cooperated with the government, Mr. McCoy proceeded to trial and was found guilty. *Id.* at 4, ECF No. 133-1, at 5. Mr. McCoy was sentenced on August 14, 1989, for the previously enumerated charges and for those based on offenses that occurred prior to November 1, 1987. Judgment Order, *Gov't. Ex. B*, ECF No. 133-2, at 1. Sentencing for the previously specified counts included 156 months for all but Count Eight from

---

[1] Mr. McCoy notes the presentence report (PSR) should not be construed as accepted fact due to his general objection to the PSR in its entirety. *Def.'s Reply*, ECF No. 134, at 2.

Docket Number 3:89-00101-01 and all counts from Docket Number 3:88-00272-01, in addition to five years for Count Eight of Docket Number 3:89-00101-01. *Id.* at 5. Both the 156-month and five-year sentences were imposed running consecutive to one another and consecutive to the life sentence that was imposed for the murder of a witness that occurred in January of 1987. *Id.*

In the Judgment Order, Chief Judge Haden II specified:

> It being the intention of the Court to impose a TWENTY-FIVE (25) YEAR preguideline sentence with a consecutive LIFE sentence to served thereafter. In the event the Defendant is ever paroled from the life sentence, it is the Court's intention that he serve an additional EIGHTEEN (18) YEARS (Thirteen plus Five years consecutive) for the offenses committed after November 1, 1987.

*Id.* at 5.

Mr. McCoy is now in his late 70's and has been incarcerated for over three decades. On June 14, 2024, Mr. McCoy filed the instant "Motion for Compassionate Relief" requesting a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 118. Mr. McCoy filed an amended motion on November 29, 2024. *Def.'s Amend. Mot.*, ECF No. 129.

## II.    LEGAL STANDARD

When a court imposes a sentence of imprisonment, it is considered the final judgment on the matter and the court, as a general prohibition, "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. §§ 3582(b), 3582(c)(1)(B). However, a court can modify a sentence where it is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194 (2018). As part of the Act, Congress amended 18 U.S.C. § 3582 and enabled courts to reduce sentences for underlying conduct that occurred on or after November 1, 1987, if "extraordinary and compelling reasons warrant such a reduction[.]"[2] 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. No.

---

[2] For individuals sentenced for offenses that occurred on or after the enactment of the Sentencing

115-391, Title VI § 603, 132 Stat. 5239 (2018); 28 C.F.R. § 572.40 (1994). Before a defendant may request such a reduction, they must ask the Bureau of Prisons (BOP) to do so on their behalf. 18 U.S.C. § 3582(c)(1)(A). After a defendant appeals the BOP's failure to motion on their behalf or after 30 days have lapsed from the warden at a defendant's facility's receipt of such request, then the defendant may file a motion before the court. *Id.*

Once a defendant satisfies this administrative exhaustion requirement, courts may grant a reduction in sentence if it is consistent with applicable policy statements issued by the United States Sentencing Commission (U.S.S.C.) and (1) there are "extraordinary and compelling reasons"; (2) the defendant is "not a danger to the safety of any other person or the community"; and (3) release is consistent with the sentencing factors identified under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c); U.S.S.C. Guidelines Manual § 1B1.13 (Nov. 2024) ("U.S.S.G.").

The Fourth Circuit has established that district courts maintain broad discretion in considering Section 3553(a) sentencing factors while deciding a motion under 18 U.S.C. § 3582(c). *United States v. Burleigh*, 145 F.4th 541, 549 (4th Cir. 2025) (citations omitted). Consistently, the U.S.S.C.'s policy statements provide for somewhat of a catch-all for when a "defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together" are similar in gravity to other stated "extraordinary and compelling" categories including, in part, the "Age of the Defendant" and/or the "Medical Circumstances of the Defendant." U.S.S.G. § 1B1.13(b)(1), (2), (5).

---

Reform Act on November 1, 1987, the applicable statute is 18 U.S.C. 3582(c) (the new law). *See* 28 C.F.R. § 572.40. Those sentenced for offenses that occurred before November 1, 1987, remain subject to 18 U.S.C. § 4205(g) (the old law) and are unable to seek sentence reductions by the sentencing court.

### III.     ANALYSIS

As a preliminary matter, Mr. McCoy has satisfied the administrative exhaustion requirement. The Government concedes that Mr. McCoy requested a reduction in sentence to wardens at two facilities and did not receive a response with a lapse of greater than thirty days. *Gov't. Resp.*, ECF No. 133, at 9 n. 3.  The Court now turns to the merits of Mr. McCoy's motion.

Mr. McCoy requests relief under 18 U.S.C. § 3582(c)(1) for his sentence imposed for offenses committed after November 1, 1987, including "Counts Seven, Eight, Ten, and Eleven (Conspiracy, Intimidation and Threats to Prevent Others from Communicating Information to Law Enforcement Officers)" of Docket Number 3:88-00272-01 and Counts One through Nine of Docket Number 3:89-00101-01 (relating to conspiracy and attempt to kill a federal witness and conspiracy and attempted escape). *Def.'s Amend. Mot.* 1–2, ECF No. 129, at 5–6. Mr. McCoy specifically asks the Court to reduce his sentence to the time he has already served followed by a lifetime of supervised release. *Id.* at 2, ECF No. 129, at 6; *Def.'s Reply*, ECF No. 134, at 13. Mr. McCoy also requests that the Court recommend the BOP file a motion for compassionate release on his behalf for the offenses that he committed prior to November 1, 1987, since that sentence remains subject to a parole board's discretion under 18 U.S.C. § 4208(g). *Def.'s Amend. Mot.* 2, ECF No. 129, at 6.

As an initial matter, the Court disagrees with the Government's argument that this motion should be denied as moot since Mr. McCoy was recently denied parole on the offenses he committed before November 1, 1987. *Gov't. Resp.* 8.  Mr. McCoy is currently subject to both the old law and the new law, and the Court may reduce the portion of the sentence imposed for conduct that occurred post-Sentencing Reform enactment under 18 U.S.C. § 3582(c).

## A. Extraordinary and Compelling Reasons

### 1. Age of the Defendant

An extraordinary and compelling reason exists based on the "Age of the Defendant" if the defendant: "(A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13(b)(2).

It is not disputed that Mr. McCoy is over 65 years old and has served at least 10 years of his term of imprisonment. The Government, however, disagrees with Mr. McCoy's claim that he is experiencing a serious deterioration in physical or mental health because of the aging process. *Gov't. Resp.* 11.

Mr. McCoy has extensive medical conditions, and as a result, the Court has reviewed and been briefed on extensive medical records.

Mr. McCoy's conditions as of October of 2025 are reported to include:

1. "Type II diabetes with neuropathy, indicating nerve damage and impaired healing"
2. "Hypertension and hyperlipidemia, both risk factors for further cardiovascular decline"
3. "Emphysema and COPD, causing diminished lung function and chronic respiratory distress"
4. "A history of COVID-19 infection, further compromising respiratory and immune capacity"
5. "Degenerative joint disease and severe osteoarthritis affecting his shoulders, hips, and lumbar spine–conditions that impair mobility and cause chronic pain"
6. "A prior fracture and granulomatous disease, suggesting chronic inflammatory changes"
7. "Transient ischemic attach (TIA) and stroke, both indicating prior cerebrovascular compromise"
8. "Urinary incontinence and prostate issues, likely reflecting neurological or age-related deterioration"

*Def.'s Suppl. in Supp. of Amend. Mot.,* ECF No. 140, at 1–2.

Mr. McCoy's conditions and the accompanying consequences are well documented within his medical records, and are further described in statements from two medical professionals. *See*

Statement of Medical Condition from Marc Eisenbaum, M.D. (Mar. 9, 2024), *Def.'s Ex. C*, ECF No. 118-4; Letter from Steven Melhorn, D.O. (Apr. 3, 2024), *Def.'s Ex. D*, ECF No. 118-5; Emails between Jeannie Biggerstaff and BOP, *Def.'s Ex.*, ECF No. 134-1, at 17–56. Dr. Eisenbaum and Dr. Melhorn provided supplementary statements summarizing updated medical records. Dr. Eisenbaum indicates Mr. McCoy's diabetes has led to complications including diabetic retinopathy and macular edema, causing a significant reduction in eyesight, and a foot ulcer which eventually required a toe amputation. *See* Medical Condition Addendum from Marc Eisenbaum, M.D. (Sept. 26, 2025), *Def.'s Ex. B*, ECF No. 140–2, at 1. Additionally, Mr. McCoy's memory has continued to deteriorate, and he was formally diagnosed with dementia. *Id.* Dr. Melhorn further notes Mr. McCoy's uncontrolled diabetes and mentions that Mr. McCoy's cognitive issues suggest Alzheimer's disease and potential Parkinson's disease. Letter from Steven Melhorn, D.O. (Oct. 6, 2025), *Def.'s Ex. A*, ECF No. 140-1, at 1. Dr. Melhorn indicates Mr. McCoy is physically limited and confined to a wheelchair, as he has "extreme balance issues" making him a "high fall risk." *Id.* at 2.

The Government's argument that "all of the ailments listed . . . seem to be natural occurrences in the aging process, not warranting compassionate release" fails because a natural progression of aging that results in serious deterioration, with the requisite age and time served, is an extraordinary and compelling reason for a reduction in sentence. *Gov't. Resp.* 11.

Mr. McCoy's reasons are extraordinary and compelling based on satisfaction of elements of U.S.S.G. § 1B1.13(b)(2).

### 2. Medical Circumstances of the Defendant

An extraordinary and compelling reason exists based on the "Medical Circumstances of the Defendant" if the defendant suffers from a serious physical or medical condition, serious

functional or cognitive impairment, or is experiencing deteriorating physical or mental health due to the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B).

Mr. McCoy argues he is unable to care for himself due the severity of his conditions, confinement to a wheelchair, and inability to chew food because he does not have teeth. *Def.'s Amend. Mot.* 7, 15, ECF No. 129, at 11, 19. The Government claims Mr. McCoy's conditions have been adequately addressed despite Mr. McCoy's contentions that the BOP failed to coordinate urgent follow-up specialty care and generally fails to manage his medical conditions. *Gov't. Resp.* 14; *Def.'s Reply* 6, 8; *Def.'s Amend. Mot.* 15, 23, ECF No. 129, at 19, 27. Based on the extent of the medical records themselves, it is apparent Mr. McCoy is being seen by multiple medical professionals and that his conditions require extensive medical attention. *See* Bureau of Prisons Health Services Records, *Gov't. Ex. D*, ECF No. 133-5, at 1–491. Mr. McCoy argues superior treatment for his conditions could be achieved outside the confines of the prison which is supported by statements of two physicians. *Def.'s Amend. Mot.* 15, ECF No. 129, at 19; *Def.'s Reply* 12; Statement of Medical Condition from Marc Eisenbaum, M.D., (Mar. 9, 2024), *Def.'s Ex. C*, at 2, ECF No. 118-4, at 3 ("The medical management of Mr. McCoy's ailments have not been adequately met while incarcerated. He has an inability for self-care and residing in the group setting of the prison places him at increased risk for infection disease such as COVID. . . . It is also very likely that he will require around-the-clock medical care in the near future."); Letter from Steven Melhorn, D.O. (Apr. 3, 2024), at 2–4 ("Mr. McCoy is currently not in a position to care for himself and Mrs. Biggerstaff will assume this care. I do not feel he is getting the appropriate care of his medical conditions which will put him at risk for additional issues. His deteriorating health

require[s] more assistance and medical attention than what he is receiving in prison.").

Mr. McCoy's serious, worsening physical conditions and potential cognitive impairment that result in his inability to provide self-care while incarcerated satisfy U.S.S.G. § 1B1.13(b)(1)(B).

### 3. Other Reasons

An extraordinary and compelling reason exists under U.S.S.G. § 1B1.13(b)(5) if the "defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together" are similar in gravity to "extraordinary and compelling" categories including, in part, the "Age of the Defendant" and/or the "Medical Circumstances of the Defendant." U.S.S.G. § 1B1.13(b)(2); U.S.S.G. § 1B1.13(b)(1).

The Court finds the above extraordinary and compelling reasons satisfactory and need not analyze the combination of factors presented by Mr. McCoy which include conditions of confinement and disparate sentencing to a co-defendant. *Def.'s Amend. Mot.* 8–9, 17–19, ECF No. 129, at 12–13, 21–23.

Additionally, pursuant to U.S.S.G. § 1B1.13(d), Mr. McCoy requests that his "exceptional rehabilitation during decades of incarceration" is considered in combination with the above "extraordinary and compelling" reasons. *Id.* at 19–20, ECF No. 129, at 23–24. In support of his rehabilitation, Mr. McCoy references receiving a GED in 1994, employment throughout incarceration, a continued relationship with his family, letters of support from fellow inmates and family members, and a low risk for violence and recidivism based on a PATTERN risk assessment. *Id.* The Government notes Mr. McCoy has not participated in rehabilitative or vocational training programs in thirty-five years and that he has not been an exemplary inmate. *Gov't. Resp.* 19–20. The Court does not find Mr. McCoy's evidence of rehabilitation particularly supportive but also

does not agree that an absence of rehabilitation exists based on Mr. McCoy's nineteen disciplinary infractions while incarcerated, the most recent of which was in 2013. *Id.* at 19.

**B. Sentencing Factors and Risk of Danger to Society**

After determining an extraordinary and compelling reason exists, a court must evaluate if a sentence reduction is appropriate based on sentencing factors of 18 U.S.C. § 3553(a) and danger the defendant poses to the safety of others. U.S.S.G. §§ 1B1.13(a), 1B1.13(a)(2); 18 U.S.C. § 3142(g).

Courts consider the following factors to achieve a sentence that is sufficient, but not greater than necessary: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the need for the sentence imposed based on seriousness of the offense, promoting respect for the law, just punishment, deterrence, protection of the public, and provision of training or care to the defendant; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing ranges established based on the guidelines and amendments; (5) pertinent policy statements; (6) avoidance of unwarranted sentencing disparities among defendants with similar records and found guilty of similar crimes; and (6) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

The Government argues a sentence reduction is inappropriate based on the 18 U.S.C. § 3553(a) sentencing factors. *Gov't. Resp.* 17, 21. In particular, it claims that Mr. McCoy continues to pose a danger to the community because of the violent nature of the offenses and his continued commission of crimes even while incarcerated. *Id.* at 18. Additionally, the Government notes Mr. McCoy's lack of restitution, acceptance, and remorse, claiming the sentence imposed is appropriate to ensure adequate deterrence, justice for victims, and respect for the law. *Id.* at 18.

Mr. McCoy continues to attest to his innocence. *See* Presentence Report, *Ex. A*, at 17, ECF.

-10-

No. 133-1, at 18; Sentencing Transcript, *Def.'s Ex.*, ECF No. 134-1, at 7–8; *Def.'s Amend. Mot.* 5, ECF No. 129, at 9. At sentencing, Mr. McCoy generally objected to the entire presentence report and continues to deny involvement in the robbery or murder. Sentencing Transcript, *Def.'s Ex.*, ECF No. 134-1, at 6; *Def.'s Reply* 2.

Mr. McCoy argues his low PATTERN risk assessment score, age, poor health, mobility issues, strong family ties, and release plan make him a low threat to the public. *Id.* at 21; *Def.'s Reply* 11–12. Further, Mr. McCoy notes the Government's characterization of him as dangerous wrongly relies on violent events that occurred over 40 years ago. *Def.'s Reply* 11. Additionally, he contends, the Government's claim of a need for deterrence is undermined by the difference in his treatment from co-defendants who were paroled. *Id.* 12. The Court is not persuaded because the circumstances of the defendants are distinguishable.

While Mr. McCoy provides multiple cases where violent offenders were granted reductions in sentence in exchange for supervised release, the corresponding reasoning often consists of extraordinary rehabilitation. As previously discussed, the Court does not find Mr. McCoy's evidence of rehabilitation to be particularly notable. Additionally, the Government notes that Chief Judge Haden II particularly indicated that a subsequent sentence was to begin for the new law offenses if Mr. McCoy was ever paroled. Judgment Order, *Gov't. Ex. B*, ECF No. 133-2, at 5; *Gov't. Resp.* 5, 11.

The nature and circumstances of Mr. McCoy's offenses – armed robbery, murder, intimidation of government witnesses, and counterfeiting – are very serious. The Court considers the importance of deterrence and how the original sentence imposed; however, the Court is only addressing a reduction in sentence for the offences subject to the new law that are relatively less violent in nature.

Ultimately, Mr. McCoy has been incarcerated for over three decades, he has mobility issues, and dementia, and records indicate the BOP is having difficulty providing care to Mr. McCoy. Emails between Jeannie Biggerstaff and the BOP, *Def.'s Ex.*, ECF No. 134-1, at 17–56.

Mr. McCoy has a support system in place consisting of his daughter who vows to care for him and other individuals supporting his release as evident by more than ten letters sent to the parole board on his behalf. Letter from Jeannie Biggerstaff to Parole Board (May 7, 2024), *Def.'s Ex.*, ECF No. 118-10, at 2; Letters to Parole Board, *Def.'s Exs.*, ECF Nos. 118-7, 118-8, 118-11–118-18.

The Court does not find Mr. McCoy to be a risk to the public based on the factors set out in 18 U.S.C. § 3142(g), including the nature and circumstances of the offense charged, weight of evidence against the defendant, personal history including health and family ties, and criminal history. The considerations at this stage overlap with the sentencing factors of 18 U.S.C. § 3553(a) and many have already been addressed. The new law offenses, although serious, are less violent in nature compared to Mr. McCoy's old law offenses, and the Court finds Mr. McCoy's support system and medical conditions drastically reduce his threat to the public safety. However, the Court's finding does not negate the fact that the parole board recently determined Mr. McCoy continues to pose a threat to the public considering offenses, including murder, that occurred prior to November 1, 1987. *See* Appeal Notice of Action from Parole Board, U.S. Dep't. of Justice (Aug. 15, 2024), *Gov't. Ex. C*, ECF No. 133–4, at 3.

Only new law offenses, those committed on or after November 1, 1987, are subject to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018 (FSA) to allow defendants themselves to request relief of courts. For this reason, the Court is limited. *See United States v.*

*King*, 24 F.4th 1226, 1230 (9th Cir. 2022). The Court will reduce Mr. McCoy's new law offenses to the amount of time he has already served in addition to a lifetime of supervised release if he is ever paroled.[3]

Mr. McCoy asks the Court to recommend that the BOP initiate the compassionate release process for his sentence subject to the old law relying on an unpublished opinion from the United States District Court for the Southern District of Florida. *Def.'s Amend. Mot.* 2, ECF No. 129, at 6. There, a magistrate judge's recommendation to grant compassionate release was rejected due to the inapplicability of 18 U.S.C. § 3582(c) to a sentence for an offense subject to the old law. *United States of America v. Richard Joseph,* No. 86-CR-003322-RAR, 2022 WL 1909096, at *4 (S.D. Fla. June 2, 2022). In *Joseph*, the court recommended that a warden initiate the proper compassionate release process under the old law (18 U.S.C. § 4205(g)) for a prisoner who was four years short of his eligibility for parole for a drug offense sentence. *Id.* at 2, 4. Unlike the drug charges in *Joseph*, Mr. McCoy's old law offenses include the murder of a federal witness. The process for a defendant like *Joseph,* who was ineligible for parole, consists of the BOP filing a motion with the sentencing court seeking a reduction in the minimum term sentence to allow for parole eligibility and consideration by the Parole Commission.[4] Since Mr. McCoy is eligible for parole, the BOP would

---

[3] The Government indicates that the victims of Mr. McCoy would need to be notified if the Court took this action. *Gov't. Resp.* 12. Although the Commission encourages the court to notify victims and provide opportunity to be heard prior to providing relief, here, Mr. McCoy remains incarcerated for the offenses that would surely prompt notification to the victims. U.S.S.G. § 1B1.13 (a)(2), comment. (n. 2).

[4] Based on the Legal Resources Guide to the Federal Bureau of Prisons, the procedure differs for an inmate who is parole eligible:

> For inmates whose offense was committed prior to November 1, 1987, the BOP may file a motion with the sentencing court seeking to reduce the inmate's minimum term to time served, thereby making the inmate eligible for parole consideration. The BOP cannot file a motion on behalf of inmates who are already parole

need to recommend that the Parole Commission review his case. *Id.* In 2024, Mr. McCoy was denied parole which was affirmed on appeal. *See* Letter from Parole Board on Appeal Notice of Action, U.S. Dep't. of Justice (Aug. 15, 2024), *Gov't. Ex. C*, ECF No. 133–4, at 3. The cases are distinguishable based on parole status, underlying offenses, resulting sentences, and procedural posture.

The Court will reduce the portion of the Mr. McCoy's offenses resulting in sentencing subject to 18 U.S.C. § 3582(c). The Court will not go as far to recommend the BOP request reconsideration of parole on Mr. McCoy behalf, in part, based on the severity of the crimes committed before November 1, 1987. Mr. McCoy's qualifications for parole will be considered again at his next statutory interim hearing which Mr. McCoy indicates is in June of 2026. *Def.'s Amend. Mot.* 6, ECF No. 129, at 10.

## IV.    CONCLUSION

For the forgoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendant's "Amended Motion for Compassionate Relief." ECF No. 129. The Court **GRANTS** Defendant's request to reduce the sentence of his post-November 1, 1987, offenses to the time Mr. McCoy has served followed by a lifetime of supervised release. The Court **DENIES** Defendant's request that the Court make a recommendation to the BOP.

---

eligible. Those inmates must go directly to the Parole Commission, or the BOP may recommend to the Parole Commission that the inmate be again reviewed for possible parole. See 18 U.S.C. § 4205(g). The actual release decision then rests with the Parole Commission, rather than with the sentencing court.

U.S. Dep't. of Justice, *Legal Resource Guide to the Fed. Bureau of Prisons 2025*, Fed. Bureau of Prisons, at 42 (2025), https://www.bop.gov/resources/pdfs/legal_guide_2025_updated.pdf.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

ENTER:        October 15, 2025

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE